UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOHN A. PRICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil A. No. 04-973 (RCL) |
| | ) | |
| ALAN GREENSPAN, | ) | |
| CHAIRMAN OF THE BOARD | ) | |
| OF GOVERNORS OF THE | ) | |
| FEDERAL RESERVE SYSTEM, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

Before the court is defendant's motion [10] to dismiss or for summary judgment. Plaintiff John Price, a 53-year-old white male alleges that his employer, defendant Chairman of the Board of Governors of the Federal Reserve System ("Agency"), illegally discriminated and retaliated against him on the basis of his age, sex, and race. Plaintiff's complaint presents four counts: Count I alleges discrimination under Title VII of the 1964 Civil Rights Act ("Title VII"); Count II alleges discrimination under the Age Discrimination in Employment Act ("ADEA"); Count III alleges retaliation under Title VII; and Count IV alleges retaliation under ADEA.

Also before the court is plaintiff's motion [22] to stay consideration of defendant's summary judgment motion for the purpose of permitting discovery. Plaintiff argues that he has not had sufficient opportunity for discovery, making it unfair to require him to produce, at this time, evidence in response to defendant's summary judgment motion.

For the following reasons, the court will deny plaintiff's motion for further discovery, dismiss the retaliation charges, Counts III and IV, for failure to comply with pertinent statutes of limitations periods, and will grant summary judgment to defendant on the remaining counts.

I.   LEGAL STANDARD

A motion to dismiss for failure to state a claim or for lack of subject matter jurisdiction should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Flynn v. Veazey Constr. Corp., 310 F. Supp. 2d 186, 189-90 (D.D.C. 2004). In reviewing a motion to dismiss, the Complaint's factual allegations must be presumed true and all reasonable inferences drawn in plaintiff's favor; however, the court need not "accept legal conclusions cast in the form of factual allegations." Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

Defendant has submitted evidence with its motion; therefore, the court, to the extent it considers facts outside of the complaint, will treat defendant's motion as one for summary judgment. See Rann v. Chao, 346 F.3d 192, 194 (D.C. Cir. 2003). Summary judgment is appropriate when the motion papers, affidavits, and other submitted evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Whether a fact is "material" is determined in light of the applicable substantive law invoked by the action. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In light of the applicable substantive law, a "genuine issue of material fact" is a fact that is determinative of a claim or

defense, and therefore, affects the outcome of the case.  See Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 248.  The moving party bears the initial burden of demonstrating that no genuine issues of material fact are in dispute.  Upon such a showing, the burden then shifts to the non-moving party to demonstrate that genuine issues of material fact are in dispute.  The Court is precluded from weighing evidence or finding disputed facts and must draw all inferences and resolve all doubts in favor of the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

II.     FACTUAL BACKGROUND

Plaintiff has been employed as a Mainframe Systems Manager, FR-28, in the Agency's Information Technology Division ("IT") since 1980.  Plaintiff alleges that around 1996, Alice Rivlin, Vice Chair of the Board of Governors, noted a low percentage of minorities and women in senior Agency positions and that the Board responded with a directive, an "Upward Mobility Program," to hire and promote more minorities and women at the expense of white males over the age of 40 who had more tenure, skills, and experience. (Compl. ¶ 19.)  To facilitate promotion of minorities and women, the Agency allegedly began transferring work away from white men over 40 so that minorities and women would have greater access to career advancement opportunities.  Additionally, "[t]he agency justified its promotion of minorities and women by manipulating Performance Management Policy ("PMP") evaluation ratings for white males over the age of 40." and, moreover, instituted rating quotas. (Comp. ¶ 20.)

Marianne Emerson, plaintiff's supervisor in IT, has allegedly implemented the Agency directive to hire and promote more minorities and women.  When two candidates were "pretty

comparable" in five evaluative criteria, Emerson would allegedly "give slightly greater weight" to the minority candidate.  (Compl. ¶ 15.)  Before Emerson, Richard Stevens supervised plaintiff and allegedly implemented Agency policies favoring minorities and women from 1999-2002 and Steven Malphrus did likewise from 1992-1999 (29-30)

Plaintiff specifically alleges that he was wrongfully passed over for promotions on several occasions.  In 1997 and 1998, for example, the Agency transferred career advancement opportunities from plaintiff to a female coworker, Sue Marcyz, who was later promoted while plaintiff has remained at the same level.  (Compl. ¶ 12-13.)

In response to this alleged discrimination by the Agency, plaintiff filed a formal EEO complaint on March 15, 2001 ("First EEO Complaint") alleging that the Agency discriminated against him on the basis of race, sex, and age through its pattern and practice of underrating the performance of white males over 40 with the intent or effect of wrongfully favoring females and minorities in career advancement and benefits.[1]  The complaint also alleged that the February 6, 2001 reorganization of IT disparately impacted white males over the age of 40.  Finally, the complaint alleged that as part of that reorganization, the Agency promoted two minority employees to Assistant Director positions over equally or more qualified white male employees, including plaintiff.

After filing the First EEO Complaint, the Agency, according to plaintiff, began to retaliate.  After March 15, 2001, Emerson, plaintiff's supervisor, began to blame plaintiff for delays in implementing a new program.  (Compl. ¶ 40.) The agency denied plaintiff's request for

---

[1] At one point, plaintiff had filed this complaint on behalf of himself and a class of similarly situated individuals.  Plaintiff withdrew his class complaint during the administrative process.  (Def. Exh. 4.)

an Alternate Work Arrangement ("AWA"), which it had not denied to other employees prior to March 15, 2001. (Compl. ¶ 39.) It questioned plaintiff's decision to ask a subordinate employee to fill in for plaintiff on an AWA off-day, also something the Agency had not done prior to March 15, 2001. (Compl. ¶ 41.) Also after March 15, 2001, Emerson began excluding plaintiff from informal management meetings and refused to speak with plaintiff. (Compl. ¶ 42.) The agency increased the pace at which it transferred assignments away from plaintiff. (Compl. ¶ 43.) Naming some of these events as his basis, plaintiff filed a second formal EEO complaint on June 22, 2001 ("Second EEO Complaint") alleging not discrimination, but retaliation for his previous EEO activity. (Def. Exh. 5.)

On March 5, 2002, Stevens, one of plaintiff's former supervisors, allegedly informed plaintiff that plaintiff would not be selected for an IT Assistant Director position; Raymond Romero, a Hispanic male with fewer years of experience, would get that position. In response to this news, plaintiff filed his third formal EEO complaint on May 10, 2002 ("Third EEO Complaint") alleging discrimination on the basis of race. He alleges that on May 7, 2001, Stevens directed the IT officers and managers to target Hispanics for hiring and promotion. At that time, the "coveted" assignment of voice communications was taken from plaintiff, who had held it for four years, and given to Raymond Romero. (Compl. ¶ 52-55.)

During the pendency of plaintiff's EEO complaints, various Agency personnel gave sworn, signed statements about their involvement with plaintiff. (See Def. Exh. 12-17.) Stevens affirms that the February 6, 2001 reorganization was not based on discriminatory criteria, and that "staffing of new branches or units was based on the work involved, the availability of staff, and the proven abilities of the managers involved." (Def. Exh. 12 at 14.) Further, Stevens notes

that the other two managers placed in the same branch as plaintiff, one minority and one older, were both subsequently promoted.

As to the non-promotion of plaintiff, the affiants demonstrate that plaintiff was consistently weaker than the candidates ultimately selected. With respect to the promotion of Sue Marycz, Marycz was promoted because she had a willingness to make several lateral moves within IT and had thereby acquired a broad range of experience while plaintiff had time and again refused such lateral moves. (Def. Exh. 12 at 12; Def. Exh. 15 at 2.) With respect to the promotion of Ray Romero, Romero was excellent at dealing with stress and unknowns, had very good knowledge of IT systems and IT security, was by far a better manager than plaintiff, took on all kinds of work, and improved the morale of his group. (Def. Exh 12 at 7, 20.) On the other hand, plaintiff was not as "capable or proactive" and his ratings regularly placed him among the lowest rated three managers in IT. (Def. Exh. 12 at 7.) In addition, the person whom Romero replaced had recommended Romero over plaintiff because plaintiff did not have the management and commination skills to become an officer: his relationship with subordinates was strained and he did not take direction well. (Def. Exh. 16 at 1-5.)

On January 9, 2002 the Agency dismissed the Second EEO Complaint and on August 6, 2003 the EEOC upheld the dismissal and notified plaintiff that he had 90 days from that date to file a civil suit if he wished to pursue his complaint further. (Def. Exh. 7.) Plaintiff did not file suit, this suit, until 10 months later on June 14, 2004. At that time, his other complaints,[2] the First and Third EEO Complaints, were still pending. So far, the parties have had no discovery in

---

[2] Plaintiff also alleges in his complaint that he filed a fourth EEO complaint on March 10, 2004 alleging further retaliation. The undisputed evidence shows, however, that no such complaint was ever filed. (Def. Exh. 9)

this case.

III.    ANALYSIS

    A.    <u>Motion for further discovery</u>

The rule governing summary judgment motions provides that

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f). Given that "[i]t is well settled that conclusory allegations unsupported by factual data will not create a triable issue of fact," a party requesting more time for discovery had to, in her affidavit, "indicate what facts she intended to discover that would create a triable issue and why she could not produce them in opposition to the motion." <u>Carpenter v. Fed. Nat'l Mortgage Ass'n</u>, 174 F.3d 231, 237 (D.C. Cir. 1999) (citing <u>Strang v. Arms Control & Disarmament Agency</u>, 864 F.2d 859, 861 (D.C. Cir. 1989); <u>Exxon Corp. v. FTC</u>, 663 F.2d 120, 126-27 (D.C. Cir. 1980)).

    Plaintiff has failed to meet his Rule 56(f) burden, because the affidavit in support of discovery contains only conclusory and boilerplate statements that do not indicate what discovery would yield. The affidavit, sworn by plaintiff's attorney, affirms:

> I have reviewed Defendant's Motion for Summary Judgment and have concluded that Plaintiff John Price's pending discovery must be received and resolved before he can effectively and properly oppose Defendant's Motion. Specifically, Plaintiff has not has not [sic] received responses to Interrogatories, Requests for Production of Documents, and Requests for Admissions, and has not had the opportunity to depose the Rule 30(b)(6) cooperate representative in this federal court action.

7

(Oswald Aff. ¶ 4.) No specifics yet. The affidavit continues:

> Defendant has offered untested affidavits as evidence of its legitimate, nondiscriminatory reasons for ending Plaintiff's employment; however, the substantive claims made in their [sic] affidavits do not reconcile with the factual account reported by plaintiff.
>
> Without the opportunity for [further discovery], the Plaintiff will be severely handicapped in his efforts to demonstrate the pretextual nature of the reasons produced by the Defendant [to justify its actions with regard to Plaintiff].

Id. ¶¶ 5-6. Again, the attorney provides no specifics. Further, the fact that defendant's affidavits are untested is of little help to plaintiff. Strang, 864 F.2d at 861(holding that "a desire to 'test and elaborate' affiants' testimony falls short; her plea is too vague to require the district court to defer or deny dispositive action"). After all, to defeat summary judgment, plaintiff ordinarily must contest defendant's affidavits with proper evidence or, as plaintiff now attempts pursuant to Rule 56(f), must indicate concretely why more time for discovery is warranted, id. The proffer of plaintiff's attorney that plaintiff tells a different story from defendant falls woefully short of plaintiff's burden. In the eyes of the court, such a statement represents but a figment of the attorney's imagination, as plaintiff has not provided a single sworn affidavit, not one of his own nor one of any other person, supporting plaintiff's story. In fact, plaintiff has offered no evidence in support of his summary judgment opposition and has, moreover, conceded the facts in defendant's statement of material facts by failing to file a statement of genuine issues pursuant to Local Civil Rule 56.1. See, e.g., Cruz v. American Airlines, 150 F. Supp. 2d 103, 115 n.8 (D.D.C. 2001). In the end, plaintiff has offered the court no "reason to question the veracity of [defendant's] affiants," id., and is entitled to no further discovery.

Although not pivotal to the court's decision to deny discovery, this decision is further supported by the fact that plaintiff was represented by counsel, (see, e.g., Def. Exh. 8; Def. Exh.

8

6.), and had some discovery while his claims made their ways through the Agency and EEOC administrative process. See Hussain v. Principi, 344 F. Supp. 2d 86, 93-94 (D.D.C. 2004). While the court is mindful that Title VII cases are de novo trials and not merely reviews of administrative agency action, Chandler v. Roudebush, 425 U.S. 840 (1976), that does not exempt plaintiff from the requirements of the Federal Rules nor does it change the fact that plaintiff has already had discovery and should, at the very least, be capable of articulating what he would seek to accomplish by additional discovery.

      B.     Retaliation Claims

          *1.*     *Title VII*

Whether plaintiff may pursue his Title VII retaliation claims turns, in this case, on whether plaintiff complied with the prescribed statute of limitations. Federal employees may only bring Title VII lawsuits in federal district court if they have exhausted remedies available through administrative processes and filed suit within 90 days of final administrative action. Mondy v. Secretary of the Army, 845 F.2d 1051 (D.C. Cir. 1988); 42 U.S.C. § 2000e-16(c). The 90 day window operates not as a jurisdictional bar, but as a statute of limitations. Mondy, 845 F.2d at 1057. Therefore, while courts will generally enforce the 90 day limitations period strictly, see, e.g., Smith v. Dalton, 971 F. Supp. 1 (D.D.C. 1997) (dismissing a suit for missing the 90 day deadline by one day), courts may "in extraordinary and carefully circumscribed instances" toll the period when, for example:

> a claimant has received inadequate notice, ... where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon, ... where the court has led the plaintiff to believe that she had done everything

>required of her, ... [or] where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction.

Id. (citing <u>Baldwin Cty. Welcome Ctr. v. Brown</u>, 466 U.S. 147, 151 (1984) (per curiam).

When an employee has pursued multiple charges of discrimination or retaliation, the employee may come to court with several final administrative decisions in hand. Charges addressed in stale decisions, those issued more than 90 days before filing of suit, may not form the basis of an employee's Title VII lawsuit regardless of subsequent unexpired decisions. This is especially so when the employee presents an unexpired decision addressing charges that are identical to those addressed in the stale decision. <u>Lo v. Pan Am. World Airways, Inc.</u>, 787 F.2d 827 (2d Cir. 1986). Similarly, an unexpired decision can only be the basis of a Title VII suit to the extent that it addresses charges different, if related, to those addressed in stale decisions. <u>Dowdell v. Sunshine Biscuits, Inc.</u>, 90 F.R.D. 107, 115-16 (M.D. Ga. 1981); <u>Bill v. Berkeley United Sch. Dist.</u>, No. 03-4091, 2004 WL 2075447, at *7-8 (N.D. Cal. Sept. 16, 2004). This makes sense, because "the time limitations of [Title VII] would be meaningless" if "potential Title VII plaintiffs could evade those requirements simply by seeking additional Notices of Right to Sue whenever they pleased." <u>Lo</u>, 787 F.2d at 827.

In this case, plaintiff has filed three charges with the Agency. The First and Third EEO Complaints, alleging discrimination, were not finally resolved at the time plaintiff filed this suit. The Second EEO Complaint, alleging only retaliation, was finally resoled on August 6, 2003 and the EEOC notified plaintiff that he had 90 days in which to file suit. Plaintiff did not file this suit until some 10 months later on June 14, 2004. Plaintiff did not vigorously pursue his retaliation claims. Moreover, plaintiff does not argue that the 90 days should somehow be equitably tolled.

Therefore, plaintiff may not litigate the charges contained in his Second EEO Complaint, namely charges of retaliation.

Plaintiff's arguments for why he should nonetheless be allowed to proceed with his retaliation claims are unpersuasive. First, plaintiff, citing Velikonja v. Mueller, 315 F. Supp.2d 66 (D.D.C. 2004), argues that exhaustion should not be required in this case because the Agency is well aware of plaintiff's retaliation claims and these claims would not be presented in court for the first time. Plaintiff has failed to see that his retaliation claims are barred not because he failed to exhaust administrative remedies but because he allowed the 90 day statute of limitations to lapse. Exhaustion is simply not the issue.

Second, plaintiff argues that, under Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002, he may still litigate his retaliation claims. Morgan rejected the so-called continuing violation doctrines that once allowed plaintiffs to recover for discrete acts of discrimination or retaliation that had not been separately exhausted but were "sufficiently related" to a properly exhausted charge. Morgan, 536 U.S. at 105. A charge of discrimination can only include discrete acts that have occurred within the time period allowed by statute, id. at 114: it cannot include acts that occurred before that time period, nor can it include acts that occur after the filing of the charge. Romero-Ostolaza v. Ridge, __ F. Supp. 2d __, 2005 WL 736525, at *7 (D.D.C. 2005). Still, Morgan recognized that some claims, hostile work environment claims, were based on conduct continuing for long periods of time, and Morgan held that a litigant could prove such a claim with acts that occurred outside the statuary time period so long as one act fell within the period. Morgan, 536 U.S. at 117-18.

Plaintiff hypothesizes that the claims in his Second EEO Complaint make up a single

"continuing practice of retaliation" much like repeated conduct can make up a viable hostile work environment claim (Pl. Br. at 16.). There is no need to decide whether such a claim is cognizable, because the nature of the plaintiff's claim is not relevant to the court's statute of limitations decision. A hostile work environment complaint or the hypothesized ongoing retaliation complaint are just complaints. If a complainant properly prods his complaint through the administrative process, he can get a final decision and proceed to court with his complaint, no matter what kind of discrimination or retaliation charge, within 90 days. The 90 day period does not relate to how quickly an employee must identify a discriminatory or retaliatory practice, but simply how quickly a complainant must get into federal court to assert his rights after losing in the administrative process.

Rejecting plaintiffs arguments, the court must dismiss plaintiff's retaliation claims under Title VII, Count III.

   2.   *ADEA*

The court must also dismiss plaintiff's retaliation claims under the ADEA, Count IV, for failure to comply with the proper statute of limitations. Unlike Title VII, which clearly specifies that federal employees must bring suit, if at all, within 90 days of a final administrative decision, see 42 U.S.C. § 2000e-16(c), the ADEA provision protecting federal employees, 29 U.S.C. § 633a, makes no mention of a limitations period. The ADEA is doubly silent, because it fails to mention limitations periods despite providing federal employees with two distinct routes to federal court – one route allows employees to proceed through the administrative process familiar to Title VII litigants while the other route allows employees to proceed directly to

federal court after giving the EEOC proper notice of their intent to sue.  See Stevens v. Dep't of Treasury, 500 U.S. 1, 5-6 (1991); 29 U.S.C. § 633a(b)-(d).

In this case, plaintiff only pursued his age discrimination claims through the administrative process and did not file a proper of notice of intent to sue with the EEOC.  Most circuits hold that when a federal employee pursues an age discrimination claim through the administrative process, that employee faces the 90 day statute of limitations set forth in Title VII, because Title VII offers the most analogous statutory regime and limitations period.  Rossiter v. Potter, 357 F.3d 26, 29-30 (1st Cir. 2004); Burzynski v. Cohen, 264 F.3d 611, 619 (6th Cir.2001); Edwards v. Shalala, 64 F.3d 601, 606 (11th Cir. 1995); Jones v. Runyon, 32 F.3d 1454, 1456 (10th Cir.1994); Long v. Frank, 22 F.3d 54, 56 (2d Cir.1994); Lavery v. Marsh, 918 F.2d 1022, 1024 (1st Cir.1990).  But see Lubniewski v. Lehman, 891 F.2d 216, 221 (9th Cir.1989) (applying six-year limitations period borrowed from 28 U.S.C. § 2401(a)).  Agreeing with the majority of circuits, this court must dismiss plaintiff's ADEA retaliation claims because it has already found that plaintiff's Title VII retaliation claims were not brought to court within Title VII's 90 day statute of limitations.

C.   Discrimination Claims

Plaintiff's remaining claims are based on his First and Third EEO Complaints.  The agency, conceding that these complaints are fully exhausted and properly before the court, nevertheless argues that plaintiff cannot recover on these complaints.

Plaintiff's discrimination claims[3] fail because plaintiff has offered no evidence to controvert defendant's sworn affidavits setting forth nondiscriminatory reasons for its treatment of plaintiff. Summary judgment may be granted to a Title VII or ADEA defendant who presents uncontroverted evidence that its employment decisions were made for nondiscriminatory reasons, because it is the plaintiff who must "create a triable question of pretext." 1 Barbara Lindemann & Paul Grossman, Employment Discrimination Law 26 (3d ed. 1996); see also Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir. 1994) (holding "that, when evidence to refute the defendant's legitimate explanation is totally lacking, summary judgment is appropriate even though plaintiff may have established a minimal prima facie") (citing Davis v. Chevron, 14 F.3d 1082, 1087 (5th Cir.1994); Durham v. Xerox Corp., 18 F.3d 836, 340 (10th Cir.1994); Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1124 (7th Cir.1994); Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir.1993); Geary v. Visitation of the Blessed Virgin Mary, 7 F.3d 324, 332 (3rd Cir.1993); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 843 (1st Cir.1993)).

In this case, plaintiff has submitted no evidence with his opposition to summary judgment and in fact has conceded the facts in defendant's statement of material facts by failing to file a statement of genuine issues pursuant to Local Civil Rule 56.1. See, e.g., Cruz v. American Airlines, 150 F. Supp. 2d 103, 115 n.8 (D.D.C. 2001). There is simply no evidence that challenges the declarations of Agency employees who offer nondiscriminatory bases for their rating of plaintiff's performance and their decisions to deny him promotions and to reorganize IT operations at the Agency. Therefore, defendant is entitled to summary judgment on the

---

[3]The court notes that as to one potential discrimination claim, both parties agree that plaintiff's year 2000 performance evaluation cannot be the independent basis for a discrimination claim.

remaining claims of discrimination and the court must dismiss Counts I and II.

IV.     CONCLUSION

For the foregoing reasons, defendant's motion [10] to dismiss or for summary judgment will be granted and plaintiff's motion [22] to stay consideration of defendant's summary judgment motion for the purpose of permitting discovery will be denied.  A separate Order consistent with this memorandum opinion shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, June 22, 2005.